621 S.E.2d 705

**James W. ARNAZZI, Plaintiff Below, Appellant**

v.

**QUAD/GRAPHICS, INC., and Robert Knighten, Defendants Below, Appellees**

No. 31860.

Supreme Court of Appeals of West Virginia.

Submitted May 24, 2005.

Decided June 17, 2005.

Harry Patton Waddell, Esq., Martinsburg, West Virginia, Attorney for Appellant.

Ancil G. Ramey, Esq., Bryan R. Cokeley, Esq., Scott E. Johnson, Esq., Steptoe & Johnson, PLLC, Charleston, West Virginia, Attorneys for Appellees.

PER CURIAM:

In the instant case, the Circuit Court of Berkeley County granted summary judgment for the appellees and defendants below, Quad Graphics, Inc. and Robert Knighten, a Quad Graphics supervisor. The circuit court ruled that the appellant and plaintiff below, James Arnazzi, did not establish the existence of a material issue of fact on the element of proximate cause in a case brought under present *W.Va.Code*, 23–4–2(d)(2)(ii) [2003]; and that the appellant therefore had not made out a *prima facie* case that would allow a jury to find for the appellant. Finding that the evidence before the circuit court did establish the existence of a material issue of fact with respect to probable cause, we reverse the circuit court's decision.

## I.

"A circuit court's entry of summary judgment is reviewed de novo." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 2, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) (citations omitted). "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syllabus Point 3, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)

*W.Va.Code*, 23–4–2(2) [2003] authorizes suits for damages against employers by employees who are injured on the job—in certain narrow, statutorily-defined circumstances. The statutory circumstance at issue in the instant case requires that the employee, to prevail in such a suit, prove:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard

within the industry or business of the employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless thereafter exposed an employee to the specific unsafe working condition intentionally; and

(E) That the employee exposed suffered serious injury or death as a direct and proximate result of the specific unsafe working condition.

*W.Va.Code*, 23–4–2(d)(2)(ii) [2003].

The specific unsafe working condition at issue before the circuit court in the instant case was the lack of legally-required training of the appellant on the safe use of a forklift.[1] The evidence showing this lack of training— and that the lack of training qualified as a specific unsafe working condition and met the standards set forth in the statute—was substantial.[2]

---

1. We note that the employer's failure in this case to provide statutorily-mandated job-specific safety training was not a mere breach of a general safety statute. *Compare Kizer v. Harper*, 211 W.Va. 47, 58, 561 S.E.2d 368, 379 (2001) (Davis, J., dissenting).

2. Looked at in the light most favorable to the appellant, there was evidence before the circuit court tending to show the following: The appellant had no experience operating a forklift, no prior training in forklift operation, and was not certified as a forklift operator. Appellant was put to work operating a forklift on his first day of work. By permitting the appellant to operate a forklift without completing a specific training program and passing an examination, appellees acted contrary to the requirements of an Occupational Heath and Safety Administration regulation, 29 C.F.R.1910.178(1), which requires forklift operators to successfully complete formal classroom instruction, practical training, and a performance evaluation by an instructor before being allowed to operate a forklift.

The regulation in question required specific training in: (1) operating instructions, warnings, and precautions for the types of truck the operator would be authorized to operate; (2) truck controls and instrumentation: where they are located, what they do, and how they work; (3) steering and maneuvering; (4) visibility (including restrictions due to loading); (5) operating limitations; (6) any other operating instructions, warnings, or precautions listed in the operator's manual for the types of vehicle that the employee is being trained to operate. The regulation also required appellees to provide specific training on the particular conditions encountered in the workplace, including: (1) surface conditions where the vehicle will be operated; and (2) narrow aisles and other restricted places where the vehicle will be operated. The OSHA-mandated training included an obstacle course of pallets through which appellant should have been required to maneuver a forklift to demonstrate his proficiency. If appellant had knocked any of the pallets over, he would not have passed the course and would not have been certified until he had demonstrated his ability to successfully complete the obstacle course.

The record contains information on the mandatory forklift safety training sufficient to establish that it is job-specific and designed to avert accidents and injuries of the type experienced by the appellant. The appellant was permitted to work as a forklift operator from his first day of employment until he was injured three weeks later. The appellees were aware at the time appellant was hired that federal law required forklift operators to be properly trained and certified.

Despite this awareness, appellees did not begin training and certifying forklift operators in compliance with federal law until after appellant's injury. The appellant was seriously injured three weeks after he began operating a forklift. Prior to his injury, several times during each of his shifts, the appellant would knock over pallets while operating his forklift. The appellant's supervisors observed him operating his forklift in an unsafe manner. Despite knowledge of appellant's lack of mandated safety training and unsafe practices, appellees permitted him to continue operating a forklift until he was injured. On the date of his injury, the appellant's supervisor instructed him to maneuver a forklift down a narrow passageway between two rows of stacked, loaded pallets. The appellant reported to his supervisor that he was concerned about his ability to safely operate the forklift in the confined space created by the stacked pallets. (There was no evidence that the closeness of stacking was a *per se* an unsafe work condition.) While proceeding down the passageway, appellant's left foot became pinned between the forklift and a wall of pallets. He sustained a severe crush injury and multiple fractures of his left foot and internal derangement of his knee, which required surgery.

We recognize that many of these factual contentions based on the appellant's evidence are vigorously disputed by the appellees, and that there is substantial evidence in the record contradicting a number of them. But at the summary judgment stage, the issue is not what the facts are, but whether there are triable issues of

For purposes of their motion for summary judgment, the appellees conceded that there was sufficient evidence, taken in the light most favorable to the appellant, to establish the existence of a triable issue of material fact with respect to the first four "elements" of a cause of action under *W.Va.Code*, 23–4–2(d)(2)(ii) [2003] ("A" through "D" above)—so as to withstand a motion for summary judgment on those elements. It was also conceded by the appellees for purposes of their motion that the appellant had suffered a serious injury.

However, the appellees argued that on the fifth or "proximate cause" element, there was no evidence presented or pointed to by the appellant tending to show that the appellant's injury was proximately caused by a lack of required safety training. (The fifth element, set out in section (E) above, requires proof that the employee "... suffered serious injury or death *as a direct and proximate result of the specific unsafe working condition.*") (emphasis added). The circuit court agreed with the appellees' argument, and granted summary judgment for the appellees.

## II.

It is well established in West Virginia that ordinarily the issue of proximate cause is a jury question to be decided based upon the totality of the evidence: ·

> Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them.

Syllabus Point 7, *Stewart v. George*, 216 W.Va. 288, 607 S.E.2d 394 (2004) (citations omitted).

The appellees argue that the appellant failed to establish a triable issue of material fact on the issue of proximate cause because the appellant did not in his deposition point to any specific fashion in which the required forklift safety training would have tended to avert the accident in question.

In his deposition, the appellant said that he did not personally know what information or other content would have been in the required forklift safety training. The appellant said that he would not speculate on how the training might have averted his injury, other than by possibly making him more careful—perhaps so careful that he would have refused to go into the narrow aisle where the accident occurred.

The appellant also stated in his deposition that he had no recollection of ever engaging in or being reprimanded for any improper conduct while driving the forklift, and that he did not know with any certainty how the accident had occurred. He speculated that a piece of cardboard or wood extending from a pallet in the narrow aisle might have stuck into the forklift operator's "cab" area and caught the appellant's foot. The appellant denied ever driving his forklift while having his foot outside the confines of the forklift's cab.

Based on the appellant's failure to acknowledge any actual or potentially unsafe conduct on his part, and on his inability to point specifically to how the safety training (that he did not receive) might have averted the accident and injury, the appellees argue that no proximately causal connection can be established between the specific unsafe workplace condition of a lack of mandatory forklift safety training and the accident and injury to the appellant. Therefore, argue the appellees, summary judgment was appropriate.

However, the appellant's failure at his deposition to acknowledge or admit to potentially unsafe conduct was not the only evidence on this issue. An accident report on the incident that was prepared by an employee of the appellee Quad/Graphics listed .the cause of the accident as being a violation of a safety rule, and stated that the appellant had his foot outside the cab.

Additionally, the appellees' designated corporate deposition witness testified that the appellant had been observed driving with his foot outside the cab. Another of the appel-

material fact that are based upon conflicting

evidence or inferences.

**40**

lee's employees so testified, and there was other evidence suggesting that the appellant had not always operated his forklift with proper caution, attention, care, etc.[3]

The appellant's uncertain deposition statements about how the accident occurred may diminish his credibility or otherwise impair the force of his case before the finder of fact, but they do not erase or nullify the effect of the evidence from the appellees, nor the fair inferences from all of the circumstances of the accident itself. This evidence permits the conclusion that the accident arose as a result of risks and conduct that the omitted training specifically sought to reduce and avert.

■ Thus there was evidence before the court that would tend to show that the specific unsafe working condition of a lack of forklift safety training was a proximate cause of the accident in question.[4] The issue of proximate cause was one to be decided by the trier of fact upon all of the evidence and argument presented by both parties.[5]

3. The appellees argue that the appellant cannot point to the evidence and contentions of the appellees and their witnesses to support his argument that a material issue of fact exists with respect to proximate cause. They cite to *Prosser v. Ross*, 70 F.3d 1005 (8th Cir.1995) and *Kiser v. Caudill*, 215 W.Va. 403, 599 S.E.2d 826 (2004), which address the issue of a plaintiff "creating an issue" by contradicting the plaintiff's own evidence to show that there is an issue of material fact. Neither of those cases involved a plaintiff pointing to the *defendant's* evidence to show that such an issue exists. In such an instance, an issue of material fact cannot be said to have been "unilaterally induced" by the plaintiff. *Kiser, supra,* 215 W.Va. at 411, 599 S.E.2d at 833, quoting *Williams v. Precision Coil,* 194 W.Va. 52, 60 n. 12, 459 S.E.2d 329, 337 n. 12 (1995).

4. The circuit court stated in its order that

Even if it is assumed that [the appellee] ... should have provided *its* employees with the mandatory OSHA forklift training because it knew that such lack of training would cause more accidents, there is still no *guarantee* that the OSHA training would have provided the employees, including the Plaintiff [appellant], with information that would enable them to avoid a workplace injury such as the Plaintiff's. (Emphasis added.)

This reasoning misapprehends the nature and purpose of safety training. No safety training can *guarantee* the absence of injury. That fact

### III.

Nothing in this opinion expands or amplifies the narrow statutory circumstances that permit the bringing of a suit against an employer on a claim that the employer had knowledge of a specific unsafe working condition and did nothing to correct the problem. For purposes of the instant case, that knowledge and inaction was conceded. The narrow issue before this Court is whether a specific unsafe working condition *could* be fairly determined by a trier of fact as having been a direct and proximate cause of the appellant's injury. Upon all of the evidence before the court considering the appellees' motion for summary judgment, it could be so determined. Accordingly, the circuit court's grant of summary judgment is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

Chief Justice ALBRIGHT concurs and reserves the right to file a concurring opinion.

does not make such training any less valuable, nor make its omission any less relevant to issues of causation. ·

5. At oral argument, the appellees suggested that the appellant was at the least required to have an expert give an opinion that the lack of required forklift safety training was a proximate cause of the accident. The appellees do not provide any authority for this proposition. We are not inclined to adopt a rule that expert testimony is necessary as a matter of law in all cases to prove that a lack of required safety training proximately caused or contributed to an accident or injury. In such cases, the finder of fact must look at the nature of the *training and the accident or injury* and determine if there is a proximately causal connection. *Cf. Lewis v. State,* 73 S.W.3d 88, 93 (Tenn.App.2001) (inadequate training was a proximate cause of workplace injury); *cf. also Wald–Tinkle v. Pinok,* ── S.W.3d ── (Tex.App. 2004), No. 01–02–01100–CV, Dec. 23, 2004, Slip Op. at 7, 2004 WL 2966293. An expert could certainly assist the finder of fact in this determination. Industrial safety training is an advanced discipline, and experts can show how accidents are reduced and averted by formal, mandatory training programs. Likewise, experts might explain how a safety training program would not have made any difference in a given case. But in the instant case, neither the appellant nor the appellees proffered such an expert; nor were they required to do so.

Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.

MAYNARD, Justice, dissenting:

I dissent in this case because there was no evidence presented that would permit a reasonable jury to conclude that the employer's failure to comply with the OSHA forklift training regulation was a proximate cause of the appellant's work place injury. The majority's decision presents yet another example of how this Court will strain to reach a favorable outcome for plaintiffs in deliberate intention actions. The end result is that these plaintiffs get a double recovery—workers' compensation benefits and civil damages.

In *Mayles v. Shoney's Inc.*, 185 W.Va. 88, 92, 405 S.E.2d 15, 19 (1990), this Court recognized that the Legislature amended the deliberate intention statute, W.Va.Code § 23–4–2, in an attempt to "make it more difficult for an employer to lose the immunity provided to him by the Workers' Compensation Act." However, beginning with *Mayles*, this Court has ignored the Legislature's intent by consistently weakening the five-part test of W.Va.Code § 23–4–2(d)(2)(ii) and making it easier for creative plaintiffs to defeat the immunity the Legislature intended to afford employers who participate in the Workers' Compensation system. In this case, the majority has done so by lowering the standard for proving proximate causation as set forth in W.Va.Code § 23–4–2(d)(2)(ii)(E).

Contrary to the majority, I do not believe that the fact that the employer failed to comply with the OSHA forklift training regulation and the fact that the appellant was injured while operating a forklift automatically created a triable issue concerning proximate causation. The appellant had the burden of presenting credible evidence that his injuries were proximately caused by his employer's failure to offer such training. However, the appellant was only able to speculate that the warnings which might have been included in such training may have prevented him from being injured. Such speculation is certainly not proof of proximate causation. As this Court explained in *Tolley v. ACF*

*Industries, Inc.*, 212 W.Va. 548, 558, 575 S.E.2d 158, 168 (2002), "the law is clear that a mere possibility of causation is not sufficient to allow a reasonable juror to find causation."

The majority seizes upon an incident report prepared by an employee of the employer which indicated that the appellant might have had his foot outside of the forklift cab when the accident occurred and finds that this evidence permits the conclusion that the accident arose as a result of conduct that the omitted training sought to reduce or avert. To me, not sticking one's foot outside of a moving vehicle is a matter of common sense. It should not be necessary for an employer to tell a forklift driver that his foot might be crushed if he places it outside of the cab of his forklift while he is driving down narrow aisles. Some things are simply so obvious that no instruction should be necessary. To hold this employer liable in this deliberate intention case for failing to train the appellant to use basic common sense is patently unfair and unjust. Obviously, the West Virginia disability machine is still well-oiled and running smoothly. Accordingly, I respectfully dissent.

I am authorized to state that Justice Benjamin joins in this dissent.